## ESTATE OF ERSKINE RICHARDSON, DECEASED.

[No. 6471 (N. S.); November 23, 1910.]

Will—Residuary Bequest Subject to General and Specific Bequests. If there is a residuary bequest made by a will, it is subject to the payment of legacies, both general and specific, and in such case it is unnecessary to determine whether a particular legacy is general or specific.

Will.—A Residuary Bequest in a will is not made the less such by the testator using the words "consisting of" and proceeding to enumerate items going to make up the residuum.

Application for settlement of account of executor and for an order for sale of personal property.

Humphrey & Hubbard, for H. J. Ralston, Executor.

Garber, Creswell & Garber, for widow, Mrs. Gladys Richardson.

Chickering & Gregory, for Dan Erskine Egerton and Seymour Piran Egerton, nephews, legatees.

COFFEY, J. Erskine Richardson died in the city and county of San Francisco, state of California, leaving estate therein, and in the city of Chicago, state of Illinois, and in the state of New York. The decedent left an instrument purporting to be his last will, which was admitted to probate in department No. 9 of the above-entitled court on the 18th day of January, A. D. 1909.

H. J. Ralston, the executor of the will of said decedent, rendered and filed herein an account and report of his administration, as such executor, on the 13th day of December, A. D. 1909, and at the same time filed herein his petition praying that after notice given of the hearing the said court order a sale of such of the personal property of said estate as this court shall designate for the payment of the claims, expenses of administration, and allowance to the widow of said decedent.

Gladys Richardson, the widow of said decedent, filed herein written objections and exceptions to the account.

The testator, although not an attorney at law, was a man of intelligence and education and skill in business, as appears by his accumulation of the estate under administration. That he had some familiarity with legal affairs may be inferred from the manner in which he worded the will. It might have been more formal and elaborate if framed by a lawyer, but it is a matter of notoriety that the employment of the most astute and accurate attorney affords no insurance of invulnerability against successful assault by other attorneys of approved ability.

The will was entirely written, dated and signed by the testator himself.

"San Francisco, September 1, 1908.

"I declare this to be my last will and testament, and hereby revoke the wills I have previously made.

"I bequeath to my nephew Dan Erskine Egerton, 182 shares of stock in the Ralston Iron Works, and 63 shares of stock in the Potrero Foundry.

"To my nephew Seymour Piran Egerton I bequeath 183 shares of stock in the Ralston Iron Works, and 62 shares of stock in the Potrero Foundry.

"To Grace Hall of 1425 Broadway, New York, I bequeath my lute.

"The residue of my property, consisting of money in the Crocker National Bank of San Francisco, and the Illinois Trust & Savings Bank, Chicago, stocks, bonds and notes in Box 94 of the Crocker Safe Deposit Vaults, and in the custody of Jas. H. Oliphant & Co., New York, the furniture of my apartment at 2335 Pacific avenue, and all other property I own, I bequeath to my wife Gladys Richardson.

"I appoint H. J. Ralston of San Francisco, and Floyd W. Mundy of New York, Executors of my estate, and direct that no bonds be required of them.

                    "ERSKINE RICHARDSON."

It would be difficult even for a lawyer trained in testamentary terminology to express more definitely and concisely his design to dispose of his possessions. He uses the precise words to indicate his legal purpose. He begins by a declaration as to the character of the document and revokes all previous papers of a like nature. In dealing with personal property he uses the apt phrase applicable thereto. He proceeds in logical and legal sequence to designate the shares into which he divides his estate. The decedent at the time of his death owned and possessed the exact number of shares of the Ralston Iron Works bequeathed to his nephews. He did not have in actual possession certificates for the Potrero Foundry stock. He had subscribed to the number of shares bequeathed to his two nephews, but certificates for the same had never been issued by the corporation.

The question is, What kind of bequest was made to each of these nephews?

The construction of this will must determine not only the validity of the objections and exceptions of the widow to the account of the executor, but also includes passing upon the petition for the sale of the personal property of the estate to meet the costs of the administration.

Under the code of California, the legacies are either specific, demonstrative, annuities, residuary, or general:

"Legacies are distinguished and designated according to their nature, as follows:

"1. A legacy of a particular thing specified and distinguished from all others of the same kind belonging to the testator, is specific; if such legacy fails, resort cannot be had to the other property of the testator;

"2. A legacy is demonstrative when the particular fund or personal property is pointed out from which it is to be taken or paid; if such fund or property fails, in whole or in part, resort may be had to the general assets, as in case of a general legacy;

"3. An annuity is a bequest of certain specified sums periodically; if the fund or property out of which they are payable fails, resort may be had to the general assets, as in case of a general legacy;

"4. A residuary legacy embraces only that which remains after all the bequests of the will are discharged;

"5. All other legacies are general legacies": Civil Code, sec. 1357.

The first question then is, Are the legacies to the nephews specific or general?

Numerous cases are cited to establish the proposition that the legacies to the nephews are general rather than specific, but counsel for the widow do not distinguish between the Ralston and Potrero stock. In the one case the certificates for the exact number of shares were in the custody of decedent at the time he made his will. That was, in the language of the Civil Code, a legacy of a particular thing, specified and distinguished from all others of the same kind belonging to the testator. There is no doubt, in the mind of this court, that the legacy of the Ralston stock is specific, and the intention of the testator is equally clear as to the Potrero stock, except

that it may be defeated by the fact that in the latter case the certificates were not yet issued; but in the former there was an actual existence of particular and definite shares of issued stock in the possession of testator at the time of his decease. What he meant is manifested by what he said, but his intention in the one case is executable by the tangibility of the thing bequeathed and nullified in the other by its nonexistence in concrete and separable shape.

There can be no doubt that he designed to make an equal division between his two nephews of his shares in the two corporations, but for the reason suggested his intention fructifies in the one instance and fails in the other.

The interpretation of the will at this time becomes important in determining what property shall be sold to satisfy certain debts of the estate.

Our Civil Code, section 1359, provides the order in which the estate of a testator shall be resorted to for satisfaction of debts. The order provided is:

"1. Property expressly appropriated by the will for the purpose.

"2. Property not disposed of by the will.

"3. Property devised or bequeathed to a residuary legatee.

"4. Property not specifically devised or bequeathed.

"5. All other property ratably."

It will be seen, therefore, that as to payment of debts the residuum must first be exhausted before resort is had to legacies, either general or specific.

Our Civil Code, section 1360, provides the order in which the property of the testator must be resorted to for the payment of legacies. The order prescribed is:

"1. Property expressly appropriated by the will for the purpose.

"2. Property not disposed of by the will.

"3. Property which is devised or bequeathed to a residuary legatee.

"4. Property which is specifically devised or bequeathed."

It will appear, therefore, that in the payment of legacies the residuum must, if necessary, be exhausted before resort is had to general or specific legacies. If the bequest to the

widow be residuary, it is immaterial whether the legacies to the Egerton nephews be general or specific.

The second question is, What is the character of the final dispository clause of the will?

It is contended, on behalf of the widow, that because of the enumeration of certain species of property therein the bequests are specific notwithstanding that testator speaks of "the residue" of his property. This must be considered a residuary clause, inasmuch as he has already attempted to dispose specifically of certain described property and now he undertakes to deal with what is left, the remainder, the residuum, after discharge of liabilities of administration.

There is but one residuary clause. Testator clearly intended that after the satisfaction of the bequests to his nephews the widow should have the remainder. It is needless to cumulate cases on this point. The fact that he undertook to describe of what the residue consisted does not destroy his obvious design: "the residue of my property consisting" and then mentioning certain items, "and all other property I own I bequeath to my wife" clearly exhibits his intent to give her all that remained; the enumeration of these particulars, in view of the comprehensive primal and final clauses of the sentence, does not alter its general character as a residuary legacy. In this clause of the will the testator intended to make the widow his residuary legatee, the same as she would have been had the enumeration been omitted.